UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DAMION WIGGAN,                         :

                    Plaintiff,    :    12 Civ. 1405 (GBD)(HBP)

    -against-                     :    REPORT AND
                                       RECOMMENDATION
NYC DEPARTMENT OF CORRECTION,     :
et al.,
                                  :

                    Defendants.   :
-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,


I.  Introduction


          By notice of motion dated August 30, 2013 (Docket Item

32) the City of New York, Correction Officer Tolliver and Captain

Jean-Pierre move for an Order pursuant to Fed.R.Civ.P 56 granting

them summary judgment and dismissing the complaint in its en-

tirety.  For the reasons set forth below, I respectfully recom-

mend that the motion be denied to the extent that it seeks

dismissal of plaintiff's excessive force claim against defendant

Tolliver and granted in all other respects.

II.  <u>Facts</u>

At all relevant times, plaintiff was a pretrial de-
tainee in the custody of the New York City Department of Correc-
tion and was housed at Rikers Island.  This action arises out of
an incident that occurred on February 7, 2012 when defendant
Tolliver, a Correction Officer on Rikers Island,  sprayed plain-
tiff with pepper spray.  There is no dispute that Tolliver
sprayed plaintiff with pepper spray.  The parties do, however,
disagree concerning the circumstances under which Tolliver used
the spray and the consequences of the incident.

 A.  Plaintiff's Version
   <u>of the Relevant Events</u>

According to plaintiff, he was sitting in a locked cell
at approximately 11:45 A.M. when Tolliver approached the cell.
Tolliver ordered plaintiff to remove a piece of paper that was
partially blocking the window in the cell door.  Plaintiff said
he would do so, but did not actually remove the item.  Tolliver
repeated his order and plaintiff responded, in substance, that he
would remove the paper later.  The discussion between Tolliver
and plaintiff grew heated, and plaintiff admits that he told
Tolliver to "get the [fuck] away from the door" (Ex. B to the
Declaration of Shawn R. Clark, dated Aug. 30, 2013, (Docket Item

34) ("Clark Decl."), at 15).  Tolliver then sprayed plaintiff "through the cell" (Clark Decl., Ex B. at 13).  Plaintiff claims that he was sprayed from a distance of approximately one foot, without warning, for approximately thirty seconds (Clark Decl., Ex B. at 16-17).[1]

After Tolliver sprayed plaintiff, he caused plaintiff's cell to be opened.  Plaintiff testified at his deposition that at that point he "tried to run pas[t] [Tolliver] to get away from the mace and that's when [Tolliver] actually got [plaintiff] in the face and the eye" (Clark Decl., Ex B. at 17).  Plaintiff further testified that he was trying to run past Tolliver to get to the shower area to wash off the spray (Clark Decl., Ex B. at 17-18).

A "probe team" then arrived in the vicinity of plaintiff's cell, and after about twenty minutes, the probe team took plaintiff to the clinic area where a nurse examined plaintiff and concluded that he was fine (Clark Decl., Ex B. at 19).  Plaintiff

---

[1]In his complaint, which is affirmed under penalty of perjury pursuant to 28 U.S.C. § 1746, plaintiff states "I was [sprayed] in the face by Correction Officer Tolliver while I was locked inside of my assigned cell over the simple fact that I curse[d] at him" (Complaint, dated Feb. 10, 2012, (Docket Item 2), ("Compl.") at 3; see also Plaintiff's Opposition to Defendant's Motion for Summary Judgment, dated Nov. 17, 2013 (Docket Item 43) ("Plaintiff's Opp."), ¶ 7 ("Plaintiff was inside his cell when Mace spray hit him in the face and eyes.")).

claims that he still suffers from blurred vision and swelling around his eye as a result of the incident (Clark Decl., Ex B. at 24).

   B.  Defendants' Version
       of the Relevant Events

        The only evidence in the record that sets forth defendants' version of the events comes from an unsworn "Report and Notice of Infraction" prepared by defendant Tolliver:

> On February 7, 2012 at approximately 1145 hours I CO Tolliver # 17554 was assigned to the 2 upper C post on the 0700 x 1531 tour.  The written instruct[ion] said inmate Wiggan, Damion B/C 8751200053 NYSID 00313414K 2 upper south cell 24 to remove an obstruction from the cell door window after he finishes his meal.  Said inmate replied Fuck You Tolliver[;] stay away from my cell.  Said inmate followed this writer down the tier yelling if you ever go near my cell again I'm gonna fuck you up.  This writer gave several direct orders to back up and go in the dayroom.  Said inmate refused to comply.  This writer was in fear for my safety and as a result a one two [sic] second burst of oleoresin capsicum was utilized from approximately three feet to the facial area.  PBA #115 was activated. Probe team arrived and escorted the inmate out of the area without further incident.  Area supervisor was notified.

(Clark Decl., Ex C. at NYC 2).

C.  Plaintiff's Claims and
     Defendants' Arguments

Read leniently,[2] the complaint alleges claims for
excessive force based on Tolliver's use of pepper spray and
deliberate indifference based on the allegedly deficient medical
care plaintiff received after being sprayed.

Defendants contend that they are entitled to summary
judgment because (1) plaintiff's excessive force claim fails as a
matter of law; (2) defendant Tolliver is entitled to qualified
immunity with respect to plaintiff's excessive force claim; (3)
plaintiff cannot show that defendants were deliberately indiffer-
ent to any serious medical needs; (4) plaintiff's claims against
defendant Jean-Pierre should be dismissed because the complaint
contains no substantive allegations against him; (5) the com-
plaint does not state a Monell claim against the City of New
York, and (6) to the extent the complaint alleges supplemental
state law claims, they should be dismissed to the extent the
pertinent federal claims are dismissed.

---

[2]See Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013)
("Where, as here, the complaint was filed pro se, it must be
construed liberally to raise the strongest arguments [it]
suggest[s]." (inner quotations and citations omitted)); accord
Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Burgos v.
Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## III.  Analysis

### A.  Applicable Legal Standards

#### 1.  Summary Judgment Standard

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To grant the motion, the court must determine that there is no genuine issue of material fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S.Ct. 2505.  The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and

the weighing of evidence are matters for the jury, not
for the court on a motion for summary judgment."
Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill
v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City
of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l
Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

        "Material facts are those which 'might affect the out-
come of the suit under the governing law,' and a dispute is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'" Coppola v. Bear
Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.
2007). "'[I]n ruling on a motion for summary judgment, a judge
must ask himself not whether he thinks the evidence unmistakably
favors one side or the other but whether a fair-minded jury could
return a verdict for the [non-movant] on the evidence pre-
sented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778,
788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank,
81 F.3d 295, 298 (2d Cir. 1996).

        Entry of summary judgment is appropriate "against a
party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on

7

which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "In such a
situation, there can be 'no genuine issue as to any material
fact,' since a complete failure of proof concerning an essential
element of the nonmoving party's case necessarily renders all
other facts immaterial."  Celotex Corp. v. Catrett, supra, 477
U.S. at 322-23, citing Fed.R.Civ.P. 56.

As noted in McClellan v. Smith, supra, 439 F.3d 137, a
court cannot make credibility determinations or weigh the evi-
dence in ruling on a motion for summary judgment.

> [T]he court must draw all reasonable inferences in
> favor of the nonmoving party, and it may not make
> credibility determinations or weigh the evidence.
> Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555
> (1990); Liberty Lobby, Inc., supra, at 254; Continental
> Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690,
> 696, n.6 (1962).  "Credibility determinations, the
> weighing of the evidence, and the drawing of legitimate
> inferences from the facts are jury functions, not those
> of a judge."  Liberty Lobby, supra, at 255.  Thus,
> although the court should review the record as a whole,
> it must disregard all evidence favorable to the moving
> party that the jury is not required to believe.  See
> Wright & Miller 299.  That is, the court should give
> credence to the evidence favoring the nonmovant as well
> as that "evidence supporting the moving party that is
> uncontradicted and unimpeached, at least to the extent
> that that evidence comes from disinterested witnesses."
> Id., at 300.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51

(2000)[3]; accord In re Dana Corp., 574 F.3d 129, 152 (2d Cir.

2009); Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001).

      2.  Standards Applicable to the
          Legal Issues in this Matter

     a.  Excessive Force Claim

     Section 1983 imposes liability on individuals who,

while acting under the color of state law, deprive another person

of "any rights, privileges, or immunities secured by the Consti-

tution."  42 U.S.C. § 1983; see Graham v. Henderson, 89 F.3d 76,

79 (2d Cir. 1996); Johnson v. Bendheim, 00 Civ. 720 (JSR), 2001

WL 799569 at *5 (S.D.N.Y. July 13, 2001) (Rakoff, D.J.).

     The Eighth Amendment protects sentenced prisoners and

prohibits "cruel and unusual punishments," U.S. Const. amend.

VIII, including the "unnecessary and wanton infliction of pain."

Gregg v. Georgia, 428 U.S. 153, 173 (1976).  The Due Process

Clause of the Fourteenth Amendment provides identical protection

---

     [3]Although the Court in Reeves was reviewing the denial of a
motion for judgment as a matter of law pursuant to Fed.R.Civ.P.
50, the same standards apply to a motion for summary judgment
pursuant to Fed.R.Civ.P. 56.  Reeves v. Sanderson Plumbing
Prods., Inc., supra, 530 U.S. at 150.

to pretrial detainees such as plaintiff.  Weyant v. Okst, 101
F.3d 845, 856 (2d Cir. 1996).

When excessive force is alleged, "the core judicial
inquiry is . . . whether force was applied in a good-faith effort
to maintain or restore discipline, or maliciously and sadisti-
cally to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992);
accord Green v. McLaughlin, 480 F. App'x 44, 48 (2d Cir. 2012).
To establish a violation of the Eighth Amendment based on a claim
of excessive force, a prisoner must satisfy "(1) a subjective
component which focuses on the defendant's motive for his con-
duct; and (2) an objective component which focuses on the con-
duct's effect."  Jeanty v. Cnty. of Orange, 379 F. Supp. 2d 533,
540 (S.D.N.Y. 2005) (Conner, D.J.), citing Sims v. Artuz, 230
F.3d 14, 20 (2d Cir. 2000); accord Hudson v. McMillian, supra,
503 U.S. at 7-8; Murray v. Johnson No. 260, 367 F. App'x 196, 198
(2d Cir. 2010).

The subjective component of the claim requires plain-
tiff to show that the defendant "'had a "wanton" state of mind
when [he was] engaging in the alleged misconduct.'"  Griffin v.
Crippen, 193 F.3d 89, 91 (2d Cir. 1999), quoting Davidson v.
Flynn, 32 F.3d 27, 30 (2d Cir. 1994).  In an excessive force
case, "whether conduct was 'wanton' turns on 'whether force was
applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm.'" <u>Sims v. Artuz</u>,
<u>supra</u>, 230 F.3d at 21, <u>quoting</u> <u>Hudson v. McMillian</u>, <u>supra</u>, 503
U.S. at 7-8.  The absence of serious injury is relevant to but
not dispositive of this inquiry.  <u>Hudson v. McMillian</u>, <u>supra</u>, 503
U.S. at 7; <u>Allen v. City of New York</u>, <u>supra</u>, 480 F. Supp. 2d at
705.

        The objective component of the claim requires plain-
tiff to show that the force applied was "sufficiently serious by
objective standards." <u>Griffen v. Crippen</u>, <u>supra</u>, 193 F.3d at 91
(internal quotation marks omitted).  However, whether the force
used was excessive depends on the context in which it is used.

> To state an Eighth Amendment excessive force
> claim, an inmate must establish that the conduct al-
> leged is "sufficiently serious" to reach constitutional
> dimensions.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834,
> 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting
> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S. Ct. 2321,
> 115 L. Ed.2d 271 (1991)).  This inquiry is "context
> specific, turning upon 'contemporary standards of
> decency.'" <u>Blyden v. Mancusi</u>, 186 F.3d 252, 263 (2d
> Cir. 1999) (internal quotation marks omitted).  While
> <u>de</u> <u>minimis</u> uses of force are "necessarily exclude[d]
> from constitutional recognition," <u>Wilkins v. Gaddy</u>, 559
> U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed.2d 995 (2010)
> (internal quotation marks omitted), "when prison offi-
> cials maliciously and sadistically use force to cause
> harm, contemporary standards of decency always are
> violated . . . . whether or not significant injury is
> evident." <u>Hudson</u>, 503 U.S. at 9, 112 S. Ct. 995.

<u>Hogan v. Fischer</u>, 738 F.3d 509, 515 (2d Cir. 2013); <u>accord</u> <u>Jeanty</u>
<u>v. Cnty. of Orange</u>, <u>supra</u>, 379 F. Supp. 2d at 540 ("'The objec-

tive component . . . is . . . contextual and responsive to
"contemporary standards of decency". . . .  When prison officials
maliciously and sadistically use force to cause harm, contempo-
rary standards of decency always are violated.'", quoting Hudson
v. McMillian, supra, 503 U.S. at 8-9).  While "[n]ot every push
or shove, even if it may later seem unnecessary in the peace of a
judge's chambers, violates a prisoner's constitutional rights[,]"
Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), overruled
on other grounds by Graham v. Connor, 490 U.S. 386 (1989) and "de
minimis use[s] of force will rarely suffice to state a constitu-
tional claim[,]" Romano v. Howarth, 998 F.2d 101, 105 (2d Cir.
1993)(citation omitted), a plaintiff "need not prove 'significant
injury' to make out an excessive force claim, and, thus, the fact
that he suffered only minor injuries does not warrant dismissal."
Griffen v. Crippen, supra, 193 F.3d at 92.

> b.  Deliberate Indifference to
>     Plaintiff's Serious Medical Needs

Plaintiff also claims that he was given inadequate
medical care resulting after he was sprayed (Compl. at 3).

Under the Eighth and the Fourteenth Amendments, the
government is obligated to provide medical care to inmates and

pretrial detainees.[4]  A prison official's "'[d]eliberate indif-
ference to serious medical needs of prisoners constitutes the
"unnecessary and wanton infliction of pain" proscribed by the
Eighth Amendment.'"  Washington v. City of New York, 10 Civ. 389
(LTS)(JLC), 2011 WL 566801 at *2 (S.D.N.Y. Feb. 15, 2011) (Swain,
D.J.), quoting Estelle v. Gamble, supra, 429 U.S. at 104.

However, not every claim of inadequate medical treat-
ment by an inmate establishes a Constitutional violation.
Estelle v. Gamble, supra, 429 U.S. at 105.  The failure to
provide medical care to an incarcerated individual will consti-
tute a constitutional violation only if plaintiff establishes two
elements:

> The first requirement is objective:  "the alleged
> deprivation of adequate medical care must be 'suffi-
> ciently serious.'"  Salahuddin v. Goord, 467 F.3d 263,
> 279 (2d Cir. 2006) (quoting Farmer v. Brennan, 511 U.S.
> 825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994)).
> The second requirement is subjective:  the charged
> officials must be subjectively reckless in their denial
> of medical care.  Id. at 280.  This means "that the
> charged official [must] act or fail to act while actu-
> ally aware of a substantial risk that serious inmate
> harm will result." Id. (emphasis added).  Officials
> need only be aware of the risk of harm, not intend
> harm.  Id.  And awareness may be proven "from the very
> fact that the risk was obvious." Farmer, 511 U.S. at
> 842, 114 S. Ct. 1970.

_____

[4]Claims for deliberate indifference to medical needs are
judged by the same standards whether they are brought buy
sentenced inmates or pretrial detainees.  Nilesen v. Rabin, 746
F.3d 58, 63 n.3 (2d Cir. 2014)

Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138-39 (2d Cir. 2013); accord Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005).  A plaintiff must satisfy both the objective and subjective prongs of the deliberate indifference standard to state such a claim.  See Hill v. Curcione, supra, 657 F.3d at 122.

A medical condition is sufficiently serious if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Johnson v. Wright, supra, 412 F.3d at 403 (internal quotation omitted).  "Factors to consider in determining the existence of a serious medical condition include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; the existence of chronic and substantial pain,' or 'the absence of adverse medical effects or demonstrable physical injury.'" Edmonds v. Cent. N.Y. Psychiatric Ctr., 10 Civ. 5810 (DAB)(KNF), 2011 WL 3809913 at *4 (S.D.N.Y. Aug. 25, 2011) (Batts, D.J.) (internal footnote and alterations omitted), quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) and Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003).

"Furthermore, 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than

14

the severity of the prisoner's underlying medical condition, considered in the abstract' is the relevant inquiry in deciding a . . . claim based on temporary delay or interruption of medical treatment." Atkins v. Cnty. of Orange, 372 F. Supp. 2d 377, 413 (S.D.N.Y. 2005) (Conner, D.J.), quoting Smith v. Carpenter, supra, 316 F.3d at 186, aff'd sub nom., Bellotto v. Cnty. of Orange, 248 Fed. App'x 232 (2d Cir. 2007).  "Indeed, in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of harm." Smith v. Carpenter, supra, 316 F.3d at 187.

To satisfy the subjective prong, a plaintiff must show that "the prison official was aware of, and consciously disre-garded, the prisoner's medical condition." Hernandez v. Goord, 02 Civ. 1704 (DAB), 2006 WL 2109432 at *6 (S.D.N.Y. July 28, 2006) (Batts, D.J.), citing Chance v. Armstrong, supra, 143 F.3d at 703.  "'Deliberate indifference is a mental state equivalent to subjective recklessness . . . .  This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.'" Nielsen v. Rabin, supra, 746 F.3d at 63, quoting Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).  "[I]n certain in-stances, a physician may be deliberately indifferent if he or she

15

consciously chooses 'an easier and less efficacious' treatment plan." Chance v. Armstrong, supra, 143 F.3d at 703.   "[M]ere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." Cuoco v. Moritsugu, supra, 222 F.3d at 107 (internal quotation marks omitted).   Accord Chance v. Armstrong, supra, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . . [T]he essential test is one of medical necessity and not one simply of desirability." (inner quotations and citations omitted)); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (McMahon, D.J.) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."); see Herbert v. NYC Dept. of

16

Corr., 10 Civ. 8799 (BSJ)(RLE), 2012 WL 3834660 at *3 (S.D.N.Y.
Aug. 21, 2102) (Jones, D.J.).

### c. Qualified Immunity

Defendants argue that even if there are genuine issues
of fact that preclude summary judgment on the excessive force and
deliberate indifference claims, they are nevertheless entitled to
summary judgment on the basis of qualified immunity.

> "Qualified immunity protects officials from lia-
> bility for civil damages as long as 'their conduct does
> not violate clearly established statutory or constitu-
> tional rights of which a reasonable person would have
> known.'" Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir.
> 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818,
> 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)). "[A] police
> officer is entitled to qualified immunity where (1) his
> conduct does not violate clearly established statutory
> or constitutional rights of which a reasonable person
> would have known, or (2) it was objectively reasonable
> for him to believe that his actions were lawful at the
> time of the challenged act." Jenkins v. City of New
> York, 478 F.3d 76, 87 (2d Cir. 2007) (quotation marks
> omitted).

Schwartz v. Marcantonatos, No. 13-2870, 2014 WL 2055932 at *2 (2d
Cir. May 20, 2014). "Qualified immunity 'gives government
officials breathing room to make reasonable but mistaken judg-
ments about open legal questions.'" Lane v. Franks, --- U.S. ---
, ---, 134 S. Ct. 2369, 2381 (2014), quoting Ashcroft v. al-Kidd,
563 U.S. ---, ---, 131 S. Ct. 2074, 2085 (2011).

To be clearly established, a right must be suffi-
ciently clear "that every 'reasonable official would
[have understood] that what he is doing violates that
right.'" [Ashcroft v. al-Kidd, 563 U.S. ----, ----, 131
S. Ct. 2074, 2078 (2011)] (quoting Anderson v. Creigh-
ton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed.2d
523 (1987)).  In other words, "existing precedent must
have placed the statutory or constitutional question
beyond debate."  563 U.S., at ----, 131 S. Ct., at
2083.  This "clearly established" standard protects the
balance between vindication of constitutional rights
and government officials' effective performance of
their duties by ensuring that officials can "'reason-
ably . . . anticipate when their conduct may give rise
to liability for damages.'"  Anderson, supra, at 639,
107 S. Ct. 3034 (quoting Davis v. Scherer, 468 U.S.
183, 195, 104 S. Ct. 3012, 82 L. Ed.2d 139 (1984)).

Reichle v. Howards, --- U.S. ---,---,  132 S. Ct. 2088, 2093-94

(2012).  However, "a case directly on point is not required [so

long as] 'existing precedent must have placed the statutory or

constitutional question beyond debate.'"   Lewis v. Clarkstown

Police Dep't, 11 Civ. 2487 (ER), 2014 WL 1364934 at *9 (S.D.N.Y.

Mar. 31, 2014), quoting Fabrikant v. French, 691 F.3d 193, 213

(2d Cir. 2012); see Hope v. Peltzer, 536 U.S. 730, 739 (2002)

(The critical question in qualified immunity analysis is not

whether identical or materially similar facts have previously

been held unlawful, but whether unlawfulness was apparent in

light of pre-existing law.).

In the excessive force context, "[s]ummary judgment
should not be granted on the basis of a qualified
immunity defense premised on an assertion of objective
reasonableness unless the defendant 'show[s] that no
reasonable jury, viewing the evidence in the light most

> favorable to the [p]laintiff, could conclude that the
> defendant's actions were objectively unreasonable in
> light of clearly established law.'" <u>O'Bert ex rel.
> Estate of O'Bert v. Vargo</u>, 331 F.3d 29, 37 (2d Cir.
> 2003) (first alteration in original) (quoting <u>Ford v.
> Moore</u>, 237 F.3d 156, 162 (2d Cir. 2001)).

<u>O'Brien v. Barrows</u>, 556 F. App'x 2, 4 (2d Cir. 2014).

Qualified immunity is an affirmative defense; defen-
dants bear the burden of proof with respect to this defense.  <u>See
Lore v. City of Syracuse</u>, 670 F.3d 127, 149 (2d Cir. 2012).

B.  Application of the
    <u>Foregoing Principles</u>

1.  <u>Excessive Force Claim</u>

Assuming, as I must, that plaintiff was sprayed under
the conditions he describes in the complaint[5] and at his deposi-
tion,[6] I conclude that summary judgment should be denied with
respect to the excessive force claim.

---

[5]As noted in footnote 1, plaintiff affirmed the truthfulness
of his complaint pursuant to 28 U.S.C. § 1746.  Thus, it has the
evidentiary weight of an affidavit and is not a mere unsworn
pleading.

[6]For the purposes of resolving the present motion only, I
must resolve all factual disputes in plaintiff's favor.  <u>See</u> <u>SEC
v. Zandford</u>, 535 U.S. 813, 818 (2002); <u>Bir v. Pfizer, Inc.</u>, 510
F. App'x 29, 31 n.4 (2d Cir. 2013); <u>Ross v. Breslin</u>, 693 F.3d
300, 302 (2d Cir. 2012).  I am not, of course, concluding that
plaintiff's version of events is, in fact, accurate.

19

The decisions that have considered whether the use of pepper spray or similar substances on incarcerated individuals can constitute excessive force have lead to mixed results. However, for the most part, the cases seem to turn on whether the pepper spray or similar substance was used in order to cause an inmate to cease engaging in dangerous or disruptive conduct.

For example, in Hogan v. Fischer, supra, 738 F.3d 509, plaintiff, a sentenced prisoner, was locked in his cell when it was approached by three guards with bags over their heads. The guards sprayed plaintiff with a mixture of vinegar, feces and machine oil. There is nothing in the Court of Appeals' opinion that suggests that plaintiff was engaging in any type of misconduct at the time of the incident. Plaintiff's only injuries were some scratches and recurring, unspecified problems with his eyes and skin. 738 F.3d at 513. The District Court dismissed the complaint, finding that the spraying of plaintiff was a de minimis use of force that did not rise to the level of a constitutional violation.

The Court of Appeals reversed, stating:

> Assuming, as we must, that the factual allegations of the complaint are true, three prison officials wearing masks approached Hogan's cell and proceeded to spray him with a mixture of feces, vinegar, and "some type [of] machine oil." The substance burned Hogan's eyes and left Hogan with other physical injuries. We are unwilling to accept, as a matter of law, the propo-

20

sition that spraying an inmate with a mixture of feces, vinegar, and machine oil constitutes a <u>de minimis</u> use of force.  <u>Compare</u> <u>Samuels v. Hawkins</u>, 157 F.3d 557, 558 (8th Cir. 1998) (per curiam) (holding that prison official's throwing a cup of water at prisoner was <u>de minimis</u> use of force) <u>with</u> <u>Lawrence v. Bowersox</u>, 297 F.3d 727, 733 (8th Cir. 2002) (holding that corrections officer's use of pepper spray on prisoners confined to their cell was more than <u>de minimis</u> use of force). Such conduct is unequivocally contrary to "contemporary standards of decency." <u>Whitley v. Albers</u>, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed.2d 251 (1986) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)) . . . .

Moreover, even if we were to assume arguendo that the physical force allegedly used was de minimis -- though it was not -- spraying an inmate with vinegar, excrement, and machine oil in the circumstances alleged here is undoubtedly "repugnant to the conscience of mankind" and therefore violates the Eighth Amendment. <u>See</u>, <u>e.g.</u>, <u>Hill v. Crum</u>, 727 F.3d 312, 323-24 (4th Cir. 2013) ("The types of actions that have been classified as 'repugnant to the conscience of mankind' are tor-ture, humiliation, or degradation."); <u>Washington v. Hively</u>, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim . . ., can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."); <u>United States v. Walsh</u>, 194 F.3d 37, 50 (2d Cir. 1999) (holding that prison guard's repeated attacks on prisoner, even if deemed <u>de minimis</u>, violated the Eighth Amendment as it was repugnant to the conscience of mankind).  When prison officials are accused of using excessive force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed.2d 156 (1992) (citing <u>Whitley</u>, 475 U.S. at 320-21, 106 S. Ct. 1078).  Where "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may . . . be sufficient evidence of a culpable state of

mind."  Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997).

738 F.3d at 515-16.

Similarly, in Lewis v. Clarkstown Police Dep't, supra, 2014 WL 1364934, plaintiff, an arrestee in pre-arraignment detention, alleged that he was improperly denied medical atten-tion and began punching the walls of his cell.  Plaintiff dis-obeyed the arresting officers' order to cease the conduct and he was repeatedly sprayed with pepper gel.[7]

The Honorable Edgar Ramos, United States District Judge, denied the defendants' motion for summary judgment on the excessive force claim, stating, among other things:

> The crux of Defendants' argument is that Gorsky's use of OC gel was justified by the fact that Plaintiff refused to comply with multiple orders to stop his disruptive behavior.  See Defs.' Mem. of Law in Supp. at 13, 15, 18.  However, the cases to which Defendants cite as supporting the use of pepper spray in such situations are readily distinguishable.  In Adilovic v. County of Westchester, No. 08 CIV. 10971 PGG, 2011 WL 2893101 (S.D.N.Y. July 14, 2011), the plaintiff was outside his cell and suffering from delirium when he ignored a correction officer's order.  Id. at *5.  In Kopy v. Howard, No. 9:07-CV-417 DNH/RFT, 2010 WL 3808677 (N.D.N.Y. Aug. 11, 2010), the plaintiff was again outside of his cell when he ignored the officer's orders, and there was no dispute that the plaintiff was warned before the pepper spray was used.  Id. at *3.

---

[7]According to the opinion in Lewis, pepper gel has the same effect as pepper spray, but does not mist and is used in close quarters to prevent bystanders from being affected by the substance.  2014 WL 1364934 at *1 n.9.

Moreover, the plaintiff in that case had failed to respond to the defendant's motion. Id. at *1. Gashi v. County of Westchester, No. 02CV 6934 GBD, 2007 WL 749684 (S.D.N.Y. Mar. 12, 2007), did not involve the use of pepper spray at all. None of these cases stands for the proposition that the use of OC gel is always permitted simply because a detainee, confined to his cell, is noncompliant. Given the factual disputes in the record, the Court is not in a position to assess whether Gorsky's use of force was proportional or excessive under this particular set of circumstances. Indeed, absent further findings of fact, the Court cannot even properly characterize what those circumstances were.

2014 WL 1364934 at *5 (footnotes omitted).

And in Thomas v. Byrd, No. 4:08CV03840 SWW/BD, 2009 WL 4546666 (E.D. Ark. Nov. 30, 2009), the plaintiff was slow getting dressed after showering and the correction officer had repeatedly admonished him to dress faster. After plaintiff had dressed, the correction officer sprayed plaintiff in the face with pepper spray.

The Court denied a motion to dismiss the excessive force claim, stating:

Although Plaintiff's fist-clenching could be construed as threatening, Defendant Roberson testified precisely to the contrary. He testified at the hearing that did not feel threatened and further testified that Plaintiff had not made any threatening movements toward him. Instead, Defendant Roberson testified that he pepper sprayed Plaintiff for noncompliance with his order to put the soap down.

Noncompliance, standing alone, is an insufficient justification to pepper spray a nonthreatening, though disobedient, pretrial detainee in the face and eyes.

23

Defendant Roberson's use of pepper spray against Plain-
tiff is the only claim on which Plaintiff can prevail.
Although Defendants argue that Roberson's use of pepper
spray was justified, the facts do not allow such a
conclusion.

Although Plaintiff had previous disciplinary
issues, none were for violent behavior.  More impor-
tant, Defendant Roberson testified that he sprayed
Plaintiff solely for noncompliance with an order to
drop the soap Plaintiff was holding.  Although Defen-
dant Roberson warned Plaintiff, he did not attempt any
less forcible means to gain Plaintiff's compliance
before dousing him with pepper spray.  At the time of
the incident, there were two other officers just out-
side the changing room, and Defendant Roberson did not
request assistance from the two other officers until
after he had sprayed Plaintiff.

Noncompliance alone is an insufficient justifica-
tion to pepper spray a nonthreatening pretrial detainee
in the face and eyes.  Defendant Roberson's actions
were excessive in light of the need to use force, the
type of force used, and the rationale for the use of
force.

2009 WL 4546666 at *9-*10.

Other cases reaching similar results on similar facts

include Tracy v. Freshwater, 623 F.3d 90, 98-99 (2d Cir. 2010);

DeSpain v. Uphoff, 264 F.3d 965, 978 (10th Cir. 2001); Williams

v. Smith, Civil No: 4:10-cv-04144, 2012 WL 5987554 at *5 (W.D.

Ark. Oct. 31, 2012) (Report & Recommendation), adopted at, 2012

WL 5987575 (W.D. Ark. Nov. 29, 2012); Ramirez v. Ferguson, Civil

No. 08-cv-5038, 2011 WL 1157997 (W.D. Ark. Mar. 29, 2011).

On the other hand, where an individual in custody has

engaged or is about to engage in threatening conduct or has

24

refused to submit to physical control (either by resisting handcuffing or refusing to return to his cell), the use of pepper spray has been found not to constitute excessive force.

For example, in Berry v. City of New York Dep't of Corr., 12 Civ. 7819 (RWS), 2014 WL 2158518 (S.D.N.Y. May 22, 2014), plaintiff was assisting in the distribution of lunch to inmates.  Without any warning or apparent provocation, plaintiff was punched in the head by another inmate and plaintiff began to defend himself, throwing three or four punches in the direction of his assailant.  2014 WL 2158518 at *1.  Plaintiff and his assailant ignored a guard's order to stop fighting, and plaintiff was sprayed with pepper spray.  2014 WL 2158518 at *1.

The Honorable Robert W. Sweet, United States District Judge, granted defendants' motion for summary judgment.  Although Judge Sweet acknowledged that the use of pepper spray "'constitutes a significant degree of force,'" 2014 WL 2158518 at *5, quoting Tracy v. Freshwater, supra, 623 F.3d at 98, he found that neither the facts alleged nor the evidence offered by plaintiff even suggested that the pepper spray was applied "in a way other than 'to ensure the compliance of an uncooperative inmate.'" 2014 WL 2158518 at *5, quoting Adilovic v. Cnty. of Westchester, 08 Civ. 10971 (PGG), 2011 WL 2893101 at *6 n.12 (S.D.N.Y. July 14, 2011) (Gardephe, D.J.).

Similarly, in <u>Adilovic v. County of Westchester</u>, <u>supra</u>, 2011 WL 28893101, a pretrial detainee appeared to exhibit symptoms of mental illness.  After being seen in his cell standing on his bed with a torn sheet tied around his waste and declaring "They're all trying to kill me," a correction officer attempted to remove plaintiff from his cell for a medical consultation. 2011 WL 28893101 at *2.  After being removed from his cell, plaintiff's "facial features and demeanor became very paranoid and nervous," he flailed his arms and again declared that individuals were trying to kill him.  2011 WL 28893101 at *2. Plaintiff refused to comply with an order to return to his cell and was subjected to a one-second burst of pepper spray.

The Honorable Paul G. Gardephe, United States District Judge, granted defendants' motion for summary judgment finding that the "one-second administration of pepper spray used here to ensure the compliance of an uncooperative, delirious inmate [was] not 'repugnant to the conscience of mankind.'"  2011 WL 2893101 at *6, <u>quoting</u> <u>Gashi v. Cnty. of Westchester</u>, 02 Civ. 6934 (GBD), 2007 WL 749684 at *6 (S.D.N.Y. Mar. 12, 2007) (Daniels, D.J.). Judge Gardephe noted, however, that the use of pepper spray can constitute excessive force if it is not used in a good faith effort to restore order and discipline.  2011 WL 2893101 at *6 n.12.

Other cases reaching similar results on similar facts include Sanchez v. McCray, 349 F. App'x 479, 482-83 (11th Cir. 2009) (per curiam); Williams v. Dehay, 81 F.3d 153 (4th Cir. 1996) (per curiam); Liberati v. Gravelle, No. 9:12-CV-00795 (MAD/DEP), 2013 WL 5372872 at *11 (N.D.N.Y. Sept. 24, 2013); Kopy v. Howard, Civ. No. 9:07-CV-417 (DNH/RFT), 2010 WL 3808677 at *3 (N.D.N.Y. Aug. 11, 2010) (Report & Recommendation), adopted at, 2010 WL 3807166 (N.D.N.Y. Sept. 21, 2010).

The facts as stated by plaintiff fall into the first category of cases.  As described by plaintiff, immediately prior to being sprayed, plaintiff was locked in his cell, had disobeyed an order from Tolliver and had engaged in an argument with Tolliver concerning the removal of an obstruction from the cell door.  There is no evidence in the record that plaintiff had made any verbal threats to Tolliver or had engaged in any conduct that actually posed a threat to Tolliver or could reasonably be construed as posing a threat to Tolliver.  There is no evidence or claim that Tolliver believed plaintiff had obscured part of the window into his cell to engage in prohibited activity that would pose a threat to another individual's safety.  Plaintiff's comment to Tolliver -- "get the [fuck] away from the door" -- was, without question, grossly inappropriate and warranted a disciplinary sanction; it did not, however, constitute a threat.

27

According to plaintiff, immediately after plaintiff's comment, Tolliver administered a thirty-second burst of pepper spray through the cell door from a distance of approximately one foot. Given the nature and timing of the events alleged by plaintiff, the inference is compelling that Tolliver sprayed plaintiff in retribution for plaintiff's refusal to obey his order and the disrespect he showed to Tolliver and not "in a good-faith effort to maintain or restore discipline . . . ." Hudson v. McMillian, supra, 503 U.S. at 7.  Assuming the facts as claimed by plaintiff, there was no threat or danger that needed to be averted through the use of pepper spray.

Defendants attempt to bring this case within the latter class of cases discussed above by arguing that plaintiff was not actually hit in the face and eye until he was out of his cell and trying to run past Tolliver.[8]  The record does not support this

---

[8]Specifically, defendants argue:

All of plaintiff's alleged injuries in this incident arise from pepper spray being sprayed into is face and eye.  (See Plaintiff's December 12, 2012 Deposition ("Pl. Dep." ), annexed to the Declaration of Shawn Raymond Clark (hereinafter "Clark Decl.") as Exhibit B ("Ex. B") 23:15-24:14)[.]  During the underlying incident there were two separate instances where C.O. Tolliver used pepper spray; however only one of those instances resulted in plaintiff actually getting hit in the face and eye.  The first spray occurred when plaintiff was in the cell, but plaintiff
(continued...)

conclusion with sufficient clarity to warrant the grant of
summary judgment.   In the complaint, plaintiff affirms under
penalty of perjury that plaintiff "was sprayed in the face by
Correction Officer Tolliver while [he] was locked inside [his]
assigned cell over the simple fact that [plaintiff] curse[d] at
him" (Compl. at 3).   Thus, the complaint is effectively an
affidavit, that pre-dates his deposition testimony, in which
plaintiff states that he was hit in the face while locked in his
cell.   Second, plaintiff's deposition testimony that Tolliver
"actually got [him] in the face and eye" when he tried to run
past Tolliver is not a statement that Tolliver did <u>not</u> get him in
the face and eye while plaintiff was in his cell.   Admittedly,
plaintiff's diction could be read to suggest that he was not
struck in the face and eyes while in his cell, but it does not
clearly state that and does not negate the possibility that
plaintiff was struck in the face and eyes while locked in his
cell.   Defendants' counsel could have clarified this issue by

---

[8](...continued)
    admits that only the second spray hit him in the face
    and eye.  ("When he opened the cell I tried to run
    pas[t] him to get away from the mace and that's when he
    actually got me in the face and eye.") (Pl. Dep.
    annexed as Ex. B to Clark Decl. 17:22-25)[.]

(Defendants' Reply Memorandum of Law in Further Support of Their
Motion for Summary Judgment, dated Dec. 13, 2013, (Docket Item
45) at 2) (internal footnote omitted).

asking some follow-up questions at plaintiff's deposition but failed to do so.  As noted above, on a motion for summary judgment, I am required to resolve all ambiguities in favor of the non-movant.

Because defendants have not established that they are entitled to judgment as a matter of law and there are questions of fact concerning the circumstances under which plaintiff was subjected to the pepper spray, I conclude that summary judgment should be denied with respect to plaintiff's excessive force claim.

### 2. Deliberate Indifference Claim

Plaintiff's deliberate indifference claim does not fair as well as his excessive force claim.

Plaintiff admits that after he was sprayed he was decontaminated with a shower and examined by a nurse who opined that no further treatment was necessary (Plaintiff's Opp. ¶¶ 9-10).  Given that pepper spray is designed to have only a temporary disabling effect without permanent consequences, Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002); Davis v. Callaway, No. 3:05CV00127 (DJS), 2007 WL 1079988 at *6 (D. Conn. Apr. 9, 2007); Strassner v. O'Flynn, No. 04-CV-6021CJS  2006 WL 839411 at *8 (W.D.N.Y. Mar. 27, 2006), there is nothing about plaintiff's

treatment that is deficient on its face or that shows that defendants were "actually aware of [and disregarded] a substantial risk that [plaintiff would suffer] serious harm" in the absence of other treatment.  Nielsen v. Rabin, supra, 746 F.3d at 63.

Plaintiff's contention, unsupported by any evidence from a trained medical source, that his eyes should have been rinsed with some unidentified "liquid formula" (Compl. at 3) is nothing more than a disagreement with the nature of the treatment that he received and does not support a deliberate indifference claim.  Cuoco v. Moritsugu, supra, 222 F.3d at 107; Chance v. Armstrong, supra, 143 F.3d at 703; Dean v. Coughlin, 804 F.2d at 215; Herbert v. NYC Dept. of Corr., supra, 2012 WL 3834660 at *3; Sonds v. St. Barnabas Hosp. Corr. Health Servs., supra, 151 F. Supp. 2d at 312.

Thus, I conclude that summary judgment should be granted dismissing plaintiff's deliberate indifference claim.

3.  Qualified Immunity

Assuming the facts as represented by plaintiff, defendants' qualified immunity defense also fails.

"[T]he salient question [with respect to the qualified immunity defense] is whether the state of the law in [2012] gave

31

[defendants] fair warning that their alleged treatment of [plaintiff] was unconstitutional." Hope v. Pelzer, supra, 536 U.S. at 741. "[I]f any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995); accord Berry v. City of New York Dep't of Corr., 12 Civ. 7819 (RWS), 2014 WL 2158518 at *7 (S.D.N.Y. May 22, 2014).

Numerous cases decided before 2012 made clear that the use of gratuitous force against a prisoner who did not pose a threat was excessive and proscribed by the Constitution. E.g., Hudson v. McMillian, supra, 503 U.S. at 7; Sims v. Artuz, supra, 230 F.3d at 21; Lawrence v. Bowersox, 297 F.3d 727, 733 (8th Cir. 2002); see also Tracy v. Freshwater, supra, 623 F.3d at 99 n.5 (collecting cases holding that no reasonable police officer could believe that he or she was entitled to use pepper spray against an arrestee who was not resisting). If the jury found that the facts are as plaintiff claims them to be -- that he was locked in his cell and had cursed at Tolliver but had not threatened him -- a reasonable juror could find that it was unreasonable for Tolliver to believe he was entitled to pepper spray plaintiff.

Under such circumstances, the use of pepper spray would serve no legitimate penological purpose.[9]

        4.  Defendants'
           Remaining Arguments

Defendants also seek dismissal of (1) the claims against defendant Jean-Pierre; (2) plaintiff's Monell claim against the City of New York and (3) plaintiff's state law claims to the extent they parallel any dismissed federal claims.

Initially, I note that plaintiff has not responded to this aspect of defendants' motion. Plaintiff's failure to offer any opposition to this aspect of defendants' motion permits these claims to be dismissed as abandoned. Thomas v. N.Y.C. Dep't of Educ., 938 F. Supp. 2d 334, 354 (2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citation & internal quotations omitted)); accord Boco v. Argent Mortg. Co., 13-CV-1165 (DLI)(CLP), 2014 WL 1312101 at *7 (E.D.N.Y. Mar. 31, 2014); White v. N.Y.C. Dep't of Educ.,

_____

[9]In this regard, I assume that the good order of correctional facilities requires that the inmates respect and obey the guard's orders, such as the order Tolliver gave plaintiff in this case. Nevertheless, this need to maintain order cannot mean that a correction officer can take it upon himself to administer a punishment -- a dose of pepper spray -- that no prison disciplinary system could legally impose.

12 Civ. 1376 (CM), 2014 WL 1273770 at *10 (S.D.N.Y. Mar. 28, 2014) (McMahon, D.J.); <u>Jain v. McGraw-Hill Cos.</u>, 827 F. Supp. 2d 272, 280 (S.D.N.Y. 2011) (Stein, D.J.), <u>aff'd</u>, 506 F. App'x 47 (2d Cir. 2012); <u>Lipton v. Cnty. of Orange</u>, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (Conner, D.J.).

Even if these claims had not been abandoned by plaintiff, two of them fail on the merits.

Apart from naming Jean-Pierre in the caption of the complaint and stating that he is employed by the New York City Department of Correction, neither the complaint nor plaintiff's opposition to defendants' motion contains any substantive allegations concerning Jean-Pierre.  Plaintiff's papers are entirely silent concerning Jean-Pierre's relationship (if any) to the events in issue.  Where a complaint fails to contain any substantive allegations concerning a defendant named in the caption, it fails to state a claim as to that defendant.  <u>Dove v. Fordham Univ.</u>, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (Sweet, D.J.) (dismissing complaint where defendant was named in caption but body of complaint contained no allegations explaining how defendant violated the law or injured plaintiff), <u>aff'd</u> <u>sub</u> <u>nom</u>., <u>Dove v. O'Hare</u>, 210 F.3d 354 (2d Cir. 2000); <u>accord</u> <u>Bernstein v. City of New York</u>, 06 Civ. 895 (RMB), 2007 WL 1573910 at *10 (S.D.N.Y.

May 24, 2007) (Berman, D.J.); Holloway v. Carey, 482 F. Supp. 551, 553 (S.D.N.Y. 1979) (Weinfeld, D.J.).

Plaintiff's attempt to state a claim against the City of New York also fails as a matter of law. A civil rights claim brought under Section 1983 will lie against a municipality only if the alleged constitutional violation committed pursuant to a municipal custom or policy. Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978); Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008).

> [I]isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability. Villante v. Dep't. of Corr., 786 F.2d 516, 519 (2d Cir. 1986) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (Brennan, J., concurring in part and concurring in the judgment)). On the other hand, such acts would justify liability of the municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125-26 (2d Cir. 2004).

Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (internal citations omitted); accord Matusick v. Erie Cnty. Water Auth., Nos. 11-1234, 11-1618, 2014 WL 700718 at *24 (2d Cir Feb. 25, 2014); see Phelan ex rel. Phelan v. Mullane, 512 F. App'x 88,

92 (2d Cir. 2013); <u>Gray v. Grp. Home</u>, 13-CV-4831 (SJF)(WDW), 2013
WL 5603293 at *3-*4 (E.D.N.Y. Oct. 10, 2013); <u>Soba v. N.Y.C.
Hous. Auth.</u>, 11 Civ. 7430 (NRB), 2013 WL 3455449 at *4-*5
(S.D.N.Y. July 9, 2013) (Buchwald, D.J.).  In the absence of
conduct committed pursuant to a custom or policy, only the
individual municipal employee responsible for the conduct can be
held liable under Section 1983.

Plaintiff here affirmatively asserts that pepper spray
was used on him <u>in</u> <u>violation</u> <u>of</u> the Department of Correction's
official policy (Plaintiff's Opp. ¶¶ 26, 28, 32 and 34).  Given
this admission and the absence of any claim or evidence that
there was a custom of violating the Department of Correction's
policy, plaintiff's <u>Monell</u> claim fails as a matter of law.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respect-
fully recommend that defendants' motion for summary judgment be
denied to the extent that it seeks dismissal of the excessive
force claim against defendant Tolliver and granted in all other
respects.

36

IV.   <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 1310, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         August 21, 2014

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Mr. Damion Wiggan
DIN 11-A-2627
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York   12051

Shawn R. Clark, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York   10007